UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | |
|---|---|
| **KENNETH W. SIMMONS** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 10-CV-02167** |
| ) | |
| **ROBERT STOCKSTILL,** ) | |
| **HAROLD STOCKSTILL,** ) | |
| **MILDRED STOCKSTILL,** ) | |
| **RYAN TARBY,** ) | |
| **GLOVER,** ) | |
| **GARY HARTZELL,** ) | |
| **VILLAGE OF MACKINAW, ILLINOIS,** ) | |
| **and COUNTY OF TAZEWELL, ILLINOIS** ) | |
| ) | |
| **Defendants.** ) | |

## OPINION

This case is before the court following an Order to the Plaintiff to Show Cause why sanctions shall not issue for violations of Rule 11(b). Since this court has received the instant case from Judge McDade, it has had a chance to review the court file and documents filed herein, a prior related court case, <u>Simmons v. Tarby, et al.</u>, 06-cv-01153, and Plaintiff's response to the Order to Show Cause. After careful and thorough consideration, the instant case is DISMISSED WITH PREJUDICE.

## BACKGROUND

After a careful review of the record and evidence, the court finds as follows. On September 2, 2008, Plaintiff Kenneth W. Simmons filed the instant *pro se* complaint in Case No. 08-cv-01219. The facts of the instant case are substantially similar to the facts in a previously-

adjudicated case, Simmons v. Tarby, et al., 06-cv-01153. Tarby was filed on June 15, 2006, judgment entered and the case terminated on September 25, 2008, and appeals by Plaintiff voluntarily dismissed on April 19, 2010.

A. Prior case: Simmons v. Tarby, et al., 06-cv-01153

In a case preceding the instant one, Plaintiff Kenneth Simmons's deposition was taken. In the deposition, Plaintiff stated that his nephew and niece told him that their father, Robert Stockstill, who is Plaintiff's brother-in-law, had shot at the Stockstill family's dogs. Plaintiff admitted, however, that he failed to query Robert as to whether such accusations were valid. Plaintiff further stated that Robert mentally and emotionally abused his wife, Lori Stockstill, who is Plaintiff's sister, although he admitted he never saw Robert physically strike her. In an effort to "warn anybody in that neighborhood that has a wife or has a child or has a puppy that there was a man in their neighborhood that would beat his own wife and shoot his own puppies," Plaintiff created a sign out of scrap plywood approximately four foot square and lettered with black spray paint, strapped it in his pickup truck, and parked it in front of Robert's house. The sign read "Ask Me Bob Robert Stockstill Beats Lori & Shoots Puppies".

Plaintiff testified that on June 16, 2004, he saw Mildred Stockstill, who is Robert's mother, and Lori Stockstill, who is Robert's wife, break the straps attaching the sign to his truck, acquire the sign, and carry it into their garage. Plaintiff then called Tazewell County central dispatch. Chief of Police Gary Hartzell and Mark Skiles, from the Mackinaw Police Department, and Deputy Ryan Tarby, from the Tazewell County Sheriff's Department, were dispatched to the scene and encountered Plaintiff and Plaintiff's wife. During the incident, Plaintiff failed to

2

comply with law enforcement directives, and was placed under arrest.[1] While being taken into custody, Plaintiff indicated to the officers that he had some type of chronic medical disability; following this, he fell to the ground, whereupon Plaintiff requested, and the officers called, an ambulance to take him to a local hospital. Plaintiff admits that he continued to be uncooperative and disrupt the peace while being placed in the ambulance. Plaintiff testified, "I wanted my sign back. I didn't stop talking about that sign. They hauled me off in the ambulance, and I was still yelling about that sign." Plaintiff was then held in Tazewell County Jail and released that evening when his wife posted bond for him. The next day, Plaintiff retrieved his truck from Midstate Collision, where it had been towed following the incident.

Plaintiff's *pro se* complaint was brought pursuant to 28 U.S.C. § 1983. He alleged, among other things, that Ryan Tarby, Sheriff Huston, Tazewell County, Village of Mackinaw, Illinois, Gary Hartzell, and Mark Skiles violated his Fourth Amendment rights by unlawfully seizing a vehicle and a sign that had belonged to him. On February 15, 2007, Judge McDade entered a lengthy order and granted, in part, a motion to dismiss filed by the defendants. Following this Order, Plaintiff's § 1983 claim for violations of the Fourth Amendment remained pending.

In January of 2008, Plaintiff filed three separate Motions for Summary Judgment. On June 25, 2008, Judge McDade entered an order ruling on the three motions. In his first motion, Plaintiff argued that Defendants illegally seized his vehicle in violation of Plaintiff's Fourth

---

[1]Following this incident, Plaintiff was charged in the Tenth Judicial Circuit of Illinois, Tazewell County, with resisting arrest. On December 14, 2004, a jury found him guilty of obstructing a peace officer. Plaintiffs admits appealing and having had his appeal denied. At the time of the deposition, he had filed a post-conviction petition.

Amendment rights. Judge McDade found that the parties disagreed as to whether Plaintiff's truck had been legally parked and whether officers were personally responsible for causing the vehicle to be towed after he was arrested. However, in their opposition to summary judgment, Defendants neglected to support their disputed facts with citations to the record, as is required by Local Rule 7.1(D)(2)(b)(2). For this reason, Defendants effectively failed to present any evidence that the seizure was reasonable—that is, supported by probable cause. For this, and several other reasons, Judge McDade granted Plaintiff summary judgment on this claim as there was no genuine issue of material fact that the seizure was unreasonable, relying on United States v. Duguay, 93 F.3d 346, 353 (7th Cir. 1996).

In his second motion for summary judgment, Plaintiff claimed that Defendants illegally seized his sign in violation of his Fourth Amendment rights. Judge McDade found that (1) the evidence showed only that the Stockstills, acting as private citizens, took Plaintiff's sign; (2) Plaintiffs failed to allege that the Stockstills were agents of Defendants; and (3) there was no evidence that Defendants acted in concert with the Stockstills to illegally seize his sign. Therefore, Plaintiff's second motion was denied with prejudice.

In his third and final motion, Plaintiff claimed, for the first time in those proceedings, that the Stockstills conspired with Defendants to take his sign. Judge McDade found that Plaintiff failed to state this claim in any complaint. Further, Plaintiff proffered absolutely no evidence to support this claim. Judge McDade did acknowledge in a footnote that while Rule 56 does not require citation to evidence, a plaintiff still bears the burden at trial to prove his case with admissible evidence. Judge McDade stated that, as such, Plaintiff was required on summary judgment to present at least some evidence that would support his claim. Because Plaintiff failed

4

to present any evidence on summary judgment, his motion was denied.

On August 1, 2008, Defendants filed their own motion for summary judgment. On August 28, 2008, Judge McDade issued an order regarding that motion. The order noted that notwithstanding numerous notices to Plaintiff, Plaintiff refused to respond to any of Defendants' pending motions. Each notice delineated the consequences of failing to respond, the deadlines for when responses were due, and that responses must be supported by evidence. The court found that, due to a complete failure to respond, Plaintiff waived his opposition to the motion for summary judgment. Defendants moved for summary judgment on the claim that Defendants took Plaintiff's sign. Judge McDade found, as above, that there was no evidence that Defendants seized Plaintiff's sign, and accordingly granted summary judgment for Defendants.

On September 25, 2008, Judge McDade entered judgment against the Defendants for the costs of towing Defendant's vehicle, for the amount of $168.84. The case was terminated on this date. On October 3, 2008, the court provided notice that costs were taxed in the amount of $778.69. Defendants indicated to the court that they had sent payment to Plaintiffs on October 20 and 30, 2008.

Following Defendants' Motions for Satisfaction of Judgment of April 23, 2009 and March 30, 2010, which were denied, Plaintiff moved to sanction Defendants for meritless motions on April 1, 2010. Judge McDade denied the motion for sanctions. On April 12, 2010, Plaintiff filed a notice of appeal and appealed from the denial of his motion for sanctions with the Seventh Circuit, but subsequently moved to voluntarily withdraw on April 16, 2010. The Seventh Circuit dismissed the appeal on April 19, 2010. This court notes that as a result of having to rule on motions without substantive merit, including, but not limited to, incorrectly

filed motions, frivolous motions to sanction opposing counsel, and motions to reconsider the court's denial of sanctions, this case, which would otherwise be an easily-adjudicated dispute, was on the court's docket for nearly four years.

B. Instant case: Simmons v. Stockstill et al., 10-cv-02167

On September 2, 2008, before Plaintiff's prior action was terminated, but after his motion for summary judgment in that prior action, which was in regard to a conspiracy between the police officers and the Stockstills, had been dismissed with prejudice, Plaintiff filed the instant § 1983 action. This case was given Case No. 08-cv-01219. In his Complaint (#1), Plaintiff named the same defendants as in the prior case, but also included three more defendants: Robert Stockstill, Harold Stockstill, who is Robert's father, and Mildred Stockstill, who is Robert's mother. Plaintiff's complaint alleges, in unclear prose, that Defendants violated § 1983 when they conspired with each other and acted in concert to deprive Plaintiff of his sign. Plaintiff alleged specific acts putatively performed by Defendants, but failed to allege any facts supporting a theory of conspiracy.

On April 30, 2009, Judge McDade, having presided over the prior case and well aware that the issues contested had previously been litigated, ordered Plaintiff to show cause in writing by May 18, 2009 why sanctions should not issue for violation of Rule 11(b). Judge McDade denied all pending motions without prejudice until the court considered whether sanctions should issue. The material portion of the Order to Show Cause (#54) is included below:

> Plaintiff's complaint appears to be patently without merit and designed to harass Defendants, to cause the unnecessary burden of defense of a patently malicious lawsuit, and to vexatiously and contumaciously multiply proceedings that are a waste of judicial resources. Plaintiff's claims against most Defendants are clearly

barred by res judicata or a statu[t]e of limitations notwithstanding the artful pleading that attempts to now claim a conspiracy. Plaintiff's other claims against the Stockstills have elevated a family squabble into a federal case. It is not this Court's duty or responsibility to mediate such disputes regardless of Plaintiff's attempts to frame the issues as being somehow a violation of his constitutional rights. Plaintiff's Complaint is vague both in scope and in any facts that would support the many claims of conspiracy, fraud, and misconduct.

IT IS THEREFORE ORDERED that Plaintiff SHOW CAUSE why sanctions should not issue for violations of Rule 11(b). Plaintiff shall specifically indicate what reasonable inquiry he made prior to filing this lawsuit that would support each of the 21 claims he alleges against each of Defendants. Plaintiff shall specifically indicate what reasonable inquiry he made prior to filing this lawsuit that would support his claim that Defendants conspired to deprive him of his constitutional rights and the claim that they fraudulently concealed various intentions and actions. Plaintiff shall specifically indicate what his legal contentions are against each Defendant and how his legal contentions are supported by the law. Plaintiff shall also indicate what evidentiary support exists for his factual contentions that each Defendant conspired with each other, that they committed fraud, that they committed misconduct (and how such misconduct is related to Plaintiff), and that he suffered various forms of distress. In addition, Plaintiff shall SHOW CAUSE why he should not be sanctioned for filing a Complaint that appears to merely harass, cause unnecessary delay, and/or needlessly increase the cost of litigation.

Plaintiff shall show cause in writing by May 18, 2009. *Plaintiff's filing may not exceed 20 double-spaced pages and shall conform to the requirements of Local Rule 5.1.*

∗ ∗ ∗

*Plaintiff is WARNED that the failure to comply with this Order SHALL result in the dismissal of his lawsuit, with prejudice, pursuant to Federal Rule of Civil Procedure 41(b).* (emphasis added).

On May 18, 2009, Plaintiff filed a 239-page Response to Judge McDade's Order (#57), two pages of which are nonresponsive, six pages of which are noncompliant, and the remaining of which are unmarked exhibits.[2] On May 27, 2009, Judge McDade entered an Order striking the

---

[2]Plaintiff's Response, had it not been struck, cites to "Soldal vs Cook County" [sic]. It is unclear whether Plaintiff is referring to Soldal v. County of Cook, 923 F.2d 1241 (7th Cir. 1991), reh'g granted, Soldal v. County of Cook, 942 F.2d 1073 (7th Cir. 1991) (en banc), reversed and

Response (#58), but allowed Plaintiff until June 3, 2009 to file a response that complies with and is responsive to the court's April 30, 2009 Order. The material text of the Order is included below:

> Plaintiff's eight page response is non-responsive. The first two pages do not address the areas of concern outlined in this Court's Order. The following four pages do not comply with the directions contained in the Order and fail to comply with the Local Rules. In addition, Plaintiff has attached 231 pages of material that he does not refer to, specifically, in his response. As such, the response [Doc. 57] is hereby STRICKEN. Plaintiff is granted until June 3, 2009 to file a response that complies with and is responsive to this Court's April 30, 2009 Order. If Plaintiff wishes to add documentation, he shall specifically refer to the document, the page, and if possible, the line number, that is relevant to the particular response he is making. Merely attaching documents is unhelpful. The failure to comply with this Order SHALL result in sanctions.

On May 29, 2009, Plaintiff filed a Response (#59). The material text is included below:

> I have read the Courts [sic] ORDER dated 5-27-09.
>
> I have tried to comply with the ORDERS of this Court but I am unable to understand my mistake and feel as though I am "banging my head against a wall" in that I do not understand what the Court wants or what I am NOT doing to comply with the local rules. THEREFORE, I can not comply with the ORDER, though all of my being wants to, and will comply and begin paying whatever sanctions the Court deems appropriate, though not fair and impartial. I have done

---

remanded on unrelated grounds by Soldal v. Cook County, Ill., 506 U.S. 56 (1992), or any of the three *Soldal* cases. Plaintiff cites to "Soldal" for the proposition that "officers [sic] refusual [sic] to allow the Plaintiff to use force to effect the return of personal property amounted to conspiracy." Although Plaintiff does not pincite, this court will assume that Plaintiff was referring to the Supreme Court decision, which states that the Supreme Court declined to review the Seventh Circuit's holding that "because the police prevented [the plaintiff] from using reasonable force to protect his home from private action that the officers knew was illegal, there was sufficient evidence of conspiracy between the private parties and the officers to foreclose summary judgment." Soldal, 506 U.S. at 543, n.6; see also Soldal, 942 F.2d at 1075 ("The deputy sheriffs prevented [the plaintiff] from exercising his right, and while this by itself may not have made them actual participants in the eviction, the condition of the record (the case was dismissed on summary judgment) requires us, as the panel opinion explained, to assume that there was a conspiracy between the private and the public defendants . . . .")

the best I can to understand the rules but my frustrations with not understanding the ORDER grows, it is my problem and the reason I quit school before completeing [sic] my freshman year of high school, if I do not understand something I literally turn bi-polar and can go from frustration to outrage at myself in an instant but at this point I know I've read the rules and just do not understand what I am not complying with.
The Court CLEARLY determined its avenue to dispose of this case, though I do appreciate the extra time the Court on its own GRANTED, I am unable to comply and further time will only frustrate me and delay what is clearly ineviatable [sic]. I ask the Court allow me to make payments to any Defendants or the Clerk of the Court as the Court deems reasonable, while appealing the issues. I will make payments while appealing, KEEPING IN MIND THE DEFENDANTS FAILED TO MITIGATE THE DAMAGES.

On July 26, 2010, Judge McDade recused himself from the case. This court assigned the case to Judge Mihm, who recused himself on July 30, 2010. On August 2, 2010, the case was assigned to this court, and given Case No. 10-cv-02167. This court noted in a text order that Judge McDade's Order of April 30, 2009 had not yet been resolved. On August 5, 2010, Plaintiff entered a Response to Judge McCuskey's text order (#66). The material text is included below:

Judge McDade was unable to resolve this matter because it is not a case of first blush.

Though McDade indicated "whether" I would be sanctioned the facts do not support it. Though Judge Mcdade [sic] indicated the pleadings were "artful" he could not find anything in the record that would trump *my* [emphasis in original] conspiracy and fraudulent concealment claims. AS THOSE ARE FACTUAL [emphasis in original]. As will the Court of Appeals and if granted or needed the Supreme Court will review everything(I mean everything including the complete record in case no. 06-1153) de novo. But the jist [sic] of it is that there is no evidence on the record that would "trump" the conspiracy or fraudulent concealment claims. Nothing.

AND, I still do not have my sign. I still to this day, see attached, requested my sign to no avail, the conspirators knew on that day that my intent was to get my sign. They know it makes my blood boil when they took my personal property and it does to this day. I WANT MY SIGN [emphasis in original.]

9

ANALYSIS

This court now turns to the facts in the instant case, keeping in mind that Plaintiff is proceeding *pro se* and is without the benefit of counsel. Normally, Judge McDade's Order to Show Cause would seem unusual because notice pleading is required in the federal courts, not fact pleading. But it is clear to this court that Judge McDade is obviously aware of the ongoing case and issue because he presided over Plaintiff's prior case, and because he required Plaintiff to show cause on specific issues of fact peculiar to Plaintiff's pleadings. In this case, Judge McDade issued an Order to Show Cause to give Plaintiff the opportunity to show that his case is not *res judicata* by providing further detail illustrating how and why the present case is distinguishable on its merits. In this way, Plaintiff was given a chance to demonstrate why he should be allowed to proceed, despite the fact that the issue has already been resolved to finality on the merits in a prior case.

This court concludes that Plaintiff's action is barred by *res judicata*. *Res judicata*, or claim preclusion, is a doctrine of law that "a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or *could have been* raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980) (emphasis added). It is founded on the policy that preventing parties from relitigating an already-resolved controversy reduces the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on a prior adjudication of the issue. ITOFCA, Inc. v. MegaTrans Logistics, Inc., 322 F.3d 928, 934 (7th Cir. 2003). The Seventh Circuit has held that *res judicata* bars a subsequent suit in federal court when there exists "(1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits. Once these

elements are satisfied, claim preclusion bars not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action." Kratville v. Runyon, 90 F.3d 195, 197-98 (7th Cir. 1996) (citations omitted). One of the more difficult to resolve concepts in *res judicata* is the scope of the phrase "identity of the causes of action." Clearly, a broader view of whether two causes of action were "identical" could have a dispositive effect on a subsequent case where a narrower one would not.

To answer that question, the Seventh Circuit adopted the "transactional test" definition provided in Restatement (Second) of Judgments § 24. Muhammad v. Oliver, 547 F.3d 874, 877 (7th Cir. 2008); Kratville, 90 F.3d at 198. It held that "a claim is deemed to have 'identity' with a previously litigated matter if it is based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence." Id. As long as "the second suit arises from the same core of operative facts as the first, it meets the test for identity of the causes of action." Id. Furthermore, the Restatement's approach states that whether a core of operative facts "constitutes a 'transaction" [is] . . . to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Restatement (Second) of Judgments § 24(2).

On the other hand, there is an equitable consideration that would cause a court to pause while considering whether to dismiss a case as *res judicata*. The court must consider the interests of fairness and equity in determining whether the case should be precluded. "If it is ambiguous and subject to reasonable doubt whether or not the plaintiff ever got a first bite (or even the opportunity to take a first bite) at the apple, to bar that claim forever would be unfair and would

act as 'a trap for the unwary.'" ITOFCA, 322 F.3d at 934.

The effect of finding that a case at bar is precluded by *res judicata* is that the plaintiff's claim is extinguished. Additionally, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction ... out of which the action arose." Muhammad, 547 F.3d at 877, citing Restatement (Second) of Judgments § 24(1).

Here, Plaintiff's claims against the government defendants named in the case are precluded by *res judicata*. In Simmons v. Tarby et al., 06-cv-01153, Plaintiff made claims against Tarby, Hartzell, Skiles, Tazewell County, and the Village of Mackinaw, alleging that his vehicle and sign had been unlawfully seized. That case was based on precisely the same incident and individuals that comprise the current complaint. Plaintiff could have easily included the current claim with his prior complaint, and could have named the current defendants. Plaintiff has already received judgment and damages in that suit against Tarby, Hartzell, and Skiles, and his other claims against the two municipal defendants were dismissed as claims upon which relief cannot be granted. As for the remaining defendants, this court concludes that Plaintiff's claims against the Stockstills have attempted to elevate a family squabble over a sign into a federal case. Needless to say, the federal courts are courts of limited jurisdiction. Without enabling law, it is not this court's duty or responsibility to mediate such personal disputes, regardless of Plaintiff's artful attempt to frame the issue as somehow being a violation of his constitutional rights. Accordingly, this court finds, in the interest of equity, that Plaintiff has already received from the government defendants as much justice as he is due from their illegal seizure. He is not entitled to a second bite at the apple. Therefore, this case is dismissed due to

*res judicata*.

The court would be remiss if it did not review the issue of the Rule 11(b) sanctions pending from Judge McDade's previous orders. Rule 11(b) of the Federal Rules of Civil Procedure provides that:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law . . .
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . .

Fed. R. Civ. P. 11(b).

Furthermore, Rule 11(c)(3) provides that the court may, *sua sponte*, direct a party to "show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). If Rule 11 has been violated, this court must issue an order to show cause why sanctions should not be imposed and give an opportunity to respond before the imposition of sanctions. Cf. Johnson v. Waddell & Reed, Inc., 74 F.3d 147, 150-51 (7th Cir. 1996).

The Seventh Circuit has recognized that although dismissal is a harsh sanction, it is proper for a district court to impose such a severe sanction "where the sanction is sufficient to deter repetition of the misconduct or to deter similar conduct by third parties." Jimenez v. Madison Area Technical College, 321 F.3d 652, 657 (7th Cir. 2003), citing Fed R. Civ. P. 11(c)(2). In Jimenez, the plaintiff filed a § 1983 action against her former employer, alleging that the College had discriminated against her on the basis of race, ethnic origin, and sex. Jimenez,

13

321 F.3d at 653. After finding that Jimenez had relied on falsified documents to support her claim, the district court sanctioned her under Rule 11(c) and dismissed her suit with prejudice. Id. Because the trial court has significant discretion in determining what sanctions should be imposed for a Rule 11 violation, non-monetary sanctions may be applied, so long as the sanction is reasonably necessary to deter repetition of the offending conduct. Jimenez, 321 F.3d at 657, citing Fries v. Helsper, 146 F.3d 452 (7th Cir. 1998).

This court concludes that Plaintiff has not sufficiently responded to Judge McDade's Order to Show Cause. Plaintiff failed to indicate what reasonable inquiry he made prior to filing the suit that would support each of the 21 claims he made; failed to indicate what reasonable inquiry he made to support the claim that Defendants conspired to deprive him of his constitutional rights, and fraudulently concealed various intentions and actions; failed to indicate what his legal contentions are, and how they are supported by the law; failed to indicate what evidentiary support exists for his factual contentions that each Defendant conspired with each other, that they committed fraud, that they committed misconduct (or how the misconduct relates to Plaintiff); and failed to show cause why he should not be sanctioned for filing a complaint that appears, on its face, to merely harass, cause unnecessary delay, and/or needlessly increase the cost of litigation.

The court further notes that Plaintiff has, including this case, four pending cases on this court's docket. The instant case, 10-cv-02167, was originally filed in September 2008; it is factually identical to a prior § 1983 claim about a family member who appropriated a painted plywood sign Plaintiff made in order to publicly disparage a family member, and for that injury is claiming several million dollars of damages from law enforcement officers who allegedly

14

conspired with them.

Case 10-cv-02168 was originally filed in November 2008 and the complaint is a § 1983 claim about an individual who drove by his house three times in five minutes in a manner allegedly intended to disturb him, and law enforcement officers who allegedly permitted that incident to occur. However, it appears to have evolved into a § 1983 claim that law enforcement officers violated Plaintiff's Fourth Amendment rights while impermissibly entering Plaintiff's property during an investigation into allegations that Plaintiff was depositing dog feces in a public roadway.

Case 10-cv-02166 was originally filed in April 2009, and appears to arise from the same nucleus of operative facts as the original complaint in Case No. 10-cv-02168.[3]

Case 10-cv-02169 was originally filed in June 2009, and is a Fair Debt Collection Act claim about a debt collection company that called him after he asked them not to, even though it appears that he actually did owe a debt.

Although this court is not ruling on the merits of the other pending cases, it is instructive to acknowledge that Plaintiff has filed five *pro se* cases in the past several years, two of which are based on a common, if not identical, nucleus of operative facts as other cases previously filed.

It is clear in this case that Plaintiff has disregarded, and continues to demonstrate an ongoing disregard of the court's rules and orders. His complaint appears, on its face, to be patently without merit and designed to harass Defendants, to cause the unnecessary burden of

---

[3]In fact, the facts in the two cases are so similar that Judge Mihm stayed the case on April 30, 2010, pending resolution of 10-cv-02168, to avoid unnecessary cost and delay.

defending a patently malicious lawsuit, and to vexatiously and contumaciously multiply proceedings that are a waste of judicial resources.

Moreover, even when given the opportunity to demonstrate his good faith in filing the complaint, Plaintiff is either unable to, or has wilfully refused to comply with Judge McDade's Order to Show Cause why sanctions should not issue for a violation of Rule 11(b). Although an imposition of the sanction of dismissal is a harsh remedy, it is not beyond the discretion of this court. A party who repeatedly fails to follow procedure cannot be continuously forgiven, even if he is *pro se*. To advance the policy of deterring repetition of the offending conduct, the court orders the instant case dismissed with prejudice.

IT IS THEREFORE ORDERED THAT:

(1) For all the foregoing reasons, Plaintiff's Complaint (#1) is dismissed with prejudice.

(2) This case is terminated.

ENTERED this 4th day of October, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE